**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| DAIWA HEALTHCO-2, L.L.C. | CIVIL ACTION NO. 03-0279 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WILLIE J. SINGLETON, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Daiwa Healthco-2, L.L.C. (Record Document 19) and Defendants Willie J. Singleton, S.P. Davis, and James C. Williams, Jr. (Record Document 25). After a thorough review of the record, the Court finds that summary judgment in favor of Plaintiff Daiwa Healthco-2, L.L.C. is proper as a matter of law.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are generally undisputed. On or about July 31, 1998, Winward Institute, Inc. ("Winward") entered into a repayment agreement with the Louisiana Department of Health and Hospitals ("LA DHH"). See Record Document 20, Exhibit B (Repayment Agreement). In conjunction with the repayment agreement, Winward and Louisiana DHH also executed a promissory note for the principal sum of $221,904.58, bearing interest at the rate of 5.36%. See Record Document 1, Exhibit A (Promissory Note). The note was to be paid in eighteen (18) consecutive and equal monthly payments of $12,857.76. See id. The monthly payments were due on the first day of each month commencing on August 5, 1998 and continued thereafter with a final payment of all unpaid

amounts of principal on January 5, 2000. See id. The parties to the promissory note agreed that in the event of default, LA DHH, at its option, could (1) recoup Winward's Medicaid claims to recover the outstanding balance, and/or (2) institute an action to recover the outstanding balance after written notice and demand[1] on Winward. See id. The promissory note also contained a provision stating that "this note shall be governed by and construed in accordance with the law of the State of Louisiana." Id.

On page three of the promissory note, Winward's representative, W. James Singleton ("Singleton"), signed the promissory note. See id. Following Singleton's signature, all of the Defendants signed their names under a paragraph stating:

> In consideration of the making, at the request of the undersigned, of the Repayment Agreement of even date, the undersigned has taken notice of the conditions and provisions on the reverse side hereof, and binds himself jointly, severally, and solidarily with each and all of them, as thereon stated.

Id.[2] Plaintiff Daiwa Healthco-2, L.L.C. ("Daiwa") maintains that the aforementioned paragraph is a personal guarantee/suretyship agreement signed by Defendants.[3]

On or about November 19, 2002, Charles F. Castille, Undersecretary of the LA DHH, executed an "assignment," which stated in pertinent part:

> [T]he Louisiana DHH hereby assigns, conveys, transfers, and delivers to Daiwa Healthco-2, L.L.C. the Promissory Note dated July 31, 1998 signed and executed by Winward Institute, Inc. and its principals Willie Singleton,

---

[1] The promissory note specifically sets forth the "demand" procedure and defined "an event of default." Record Document 1, Exhibit A (Promissory Note).

[2] Phillip Pennywell, Jr., who is not a defendant in this case, also signed below the aforementioned paragraph.

[3] "A contract of guaranty is equivalent to a contract of suretyship, and the two terms may be used interchangeably." Boyle v. Fringe Facts, Inc., 414 So.2d 1333, 1338 (La.App. 2 Cir. 1982).

> S.P. Davis, James Matthews, and Dr. Phillip Pennywell, Jr. without recourse or any transfer or endorsement warranties or any other warranty or representation whatsoever.

Id., Exhibit 1 (Assignment).

At some point, Winward failed to make its monthly payments, thus defaulting under its obligations pursuant to the promissory note. See Record Document 1, ¶ 6. On February 13, 2003, Daiwa filed a "Complaint for Money Judgment on Note." See id. Daiwa alleges that "[t]he Defendants bound themselves jointly, severally and solidarily, each with the others and with Winward, for the payment of the [promissory] [n]ote." Id. at ¶ 5. Defendants answered the complaint on May 30, 2003, denying that they owed any monies due under the promissory note referenced in Daiwa's complaint. See Record Document 6. Daiwa amended its complaint on September 23, 2003 for the sole purpose of properly pleading its citizenship. See Record Document 11.

On April 5, 2004, Daiwa filed a motion for summary judgment. See Record Document 19. Defendants later filed their own motion for summary judgment on April 14, 2004. See Record Document 25. Both motions for summary judgment are contested and are now before this Court. See Record Documents 29 & 33.

## II. LAW AND ANALYSIS

**A.  Summary Judgment Standard.**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New

York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th

Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., 477 U.S. at 248, 106 S. Ct. at 2510.

**B.  Louisiana Law of Suretyship.**

Because this case is before this Court on diversity jurisdiction under 28 U.S.C. § 1332, Louisiana substantive law applies in interpreting the purported personal guarantee/suretyship agreement. This Court's goal, sitting as an Erie court, is to rule the way the Louisiana Supreme Court would rule on the issues presented. See Primrose Operating Co. v. National American Ins. Co., 382 F.3d 546, 564-65 (5th Cir. 2004).

"Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. C.C. Art. 3035. A contract of "suretyship must be express and in writing." La. C.C. Art. 3038. Simply put, under Article 3038, "to be a contract of suretyship, the written agreement must expressly contain a promise to pay the debt of another. Colloquially, if the agreement cannot be construed as saying 'if he doesn't pay, I will,' then it will not meet the requirements of

suretyship." Michael H. Rubin, Ruminations on Suretyship, 57 La.L.Rev. 565, 572 (1997).

Moreover, in Louisiana, "when the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen." La. C.C. Art. 1832. Specifically, "parol evidence is inadmissible to establish . . . a promise to pay the debt of a third person," such as a suretyship agreement. La. C.C. Art. 1847. Thus, based on Article 1847, parol evidence is inadmissible to prove a creditor-surety relationship. Ruminations on Suretyship, 57 La.L.Rev. at 573.

Simply put, the Civil Code is unequivocal – "sureties are bound solely by virtue of the language of their written contract." Id. at 573-74. Creditors are forbidden from employing parol evidence to alter what the written contract identifies as the surety's obligation. See id. at 574. Similarly, a surety is proscribed from using parol evidence to change what a written contract describes as the surety's obligation to the creditor. See id. at 574.

Louisiana jurisprudence also provides guidance on the law of suretyship. The Louisiana Second Circuit Court of Appeal has reasoned that suretyship agreements "are subject to the same rules of interpretation as contracts in general." Bossier Orthopaedic Clinic, et al. v. Durham, 32,543-CA (La.App. 2 Cir. 12/15/99), 747 So.2d 731, 735. Further, the court stated:

> The meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence. Although parol evidence is inadmissible to vary the terms of a written contract, if the terms of a written contract are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and

show the intent of the parties. In interpreting the provisions of an agreement about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms. In ascertaining the intention of the parties to a contract, where it cannot be adequately discerned from the contract or agreement as a whole, the facts and circumstances surrounding the parties at the time of contracting are a relevant subject of inquiry. Determining the intent of the parties becomes, in part, a question of fact.

Id. at 735-36. Yet, these jurisprudential rules must be considered in conjunction with the requirement that "[a] surety's contract . . . must contain an absolute expression of an intent to be bound" and "must be explicit." Boyle, 414 So.2d at 1338. Parol evidence shall not be used to prove a suretyship even when admitted at trial without objection. See id. Thus, it is evident that under the aforementioned statutes and jurisprudence, this Court "can only consider the 'writings' involved in the instant situation in order to determine if a suretyship relationship or a continuing guaranty existed which would result in [Defendant] being liable to [Daiwa]." Id.

**C.     Application of Louisiana Law of Suretyship to this Case.**

The sole legal issue before this Court is whether the purported personal guarantee/suretyship agreement on page three of the promissory note is enforceable against Defendants under Louisiana law, thus resulting in Defendants being liable as sureties to Daiwa. As stated previously, the supposed personal guarantee/suretyship agreement reads as follows:

> In consideration of the making, at the request of the undersigned, of the Repayment Agreement of even date, the undersigned has taken notice of the conditions and provisions on the reverse side hereof, and binds himself jointly, severally, and solidarily with each and all of them, as thereon stated.

Record Document 1, Exhibit A.

Defendants do not contest that they signed page three of the promissory note.

Rather, Defendants observe that there is no reference in the promissory note to their personally guaranteeing the debt of Winward and maintain that they did not sign the promissory note as guarantors. See Record Document 26, ¶¶2, 3. Most importantly, Defendants note that the aforementioned paragraph "relates to and references 'conditions and provisions on the reverse side hereof.'" See Record Document 25. Defendants argue that because there is no reverse side to the promissory note, the four corners of the document prevent a finding by this Court that Defendants agreed to pay the debt of Winward "jointly, severally, and solidarily with each and all of them." See Record Document 1, Exhibit A. Defendants further contend that under La. C.C. Article 1847, Daiwa is prohibited from introducing any evidence, i.e., parol evidence, outside the four corners of the promissory note and the purported personal guarantee/suretyship agreement to establish the alleged suretyship obligation of Defendants.

Conversely, Daiwa has presented the affidavit of Nancy Kelly ("Kelly"), an attorney for the LA DHH, in support of its motion for summary judgment. See Record Document 20, Exhibit A (Affidavit of Nancy Kelly). In her affidavit, Kelly recalled a July 1998 telephone conference, wherein an agreement was reached between LA DHH and Winward, conducted by Bankruptcy Judge Stephen V. Calloway. See id., ¶ 3. Kelly stated that during the telephone conference, the parties advised the bankruptcy court that LA DHH, Winward, and Winward's shareholders had reached an agreement whereby LA DHH would not assert its claim of offset against Winward's Medicaid payments and would permit Winward to attempt to reorganize, provided that, among other things, Winward entered into a repayment agreement and its shareholders personally obligated themselves for the indebtedness. See id. Kelly further stated that Willie Singleton and DHH attorneys

confirmed to the bankruptcy court that all parties had consented to this agreement. See id. As to the drafting of the promissory note and purported personal guarantee/suretyship agreement, Kelly recounted:

> Since time was of the essence . . . DHH . . . quickly drafted the promissory note and personal guarantee using a one-page form promissory note and personal guarantee from another matter as a basis. One this one-page form, the personal guarantee was on the back of the page. In the promissory note and guarantee attacked, there are no terms and provisions actually on the reverse or opposite side of the guarantee. The language 'on the reverse side hereof' perhaps should have been changed to 'heretofore' or something similar to reference the promissory note on the preceding pages.

Id., ¶ 5. Daiwa further argues that there is no fatal ambiguity as to the debt guaranteed by Defendants for several reasons. First, Daiwa notes that the repayment agreement executed by LA DHH and Winward on or about July 31, 1998 contemplated that the promissory note would be "personally guaranteed by James C. Williams, S.P. Davis, Phillip Pennywell, Jr., and Willie J. Singleton, in solido." Record Document 20, Exhibit B (Repayment Agreement), III(A). In addition, Daiwa contends that the "course of dealing" and background events and facts between LA DHH, Winward, and Defendants evidences that there is no ambiguity as to the personal guarantee suretyship agreement. See Record Document 29 at 4. Simply put, Daiwa maintains that "Defendants cannot now be heard to argue that there is a fatal ambiguity as to the debt [they] were guaranteeing . . . [where] none of the Defendants have filed any affidavit stating that they were somehow confused as to exactly what debt they were guaranteeing nor the terms relating to said debt." Id. at 5.

As stated by Kelly in her affidavit, it is evident that the LA DHH drafted the purported personal guarantee/suretyship agreement with haste and this resulted in a somewhat

clumsy document. Thus, this Court is left with the difficult task of interpreting the supposed personal guarantee/suretyship agreement in light of not only the codal articles stating that a contract of suretyship must be express and may not be proven by parol evidence, but also Louisiana jurisprudence holding that suretyship contracts are subject to the same rules of interpretation as contracts in general. See generally La. C.C. Arts. 3038 & 1847; Bossier Orthopaedic Clinic, et al., 747 So.2d at 735.

Clearly, the "four corners" of the promissory note and the so-called personal guarantee/suretyship agreement are ambiguous, as there is no reverse side to the promissory note for Defendants to take notice of and to bind themselves "jointly, severally, and solidarily." Thus, in order to find such personal guarantee/suretyship agreement enforceable, we must resort to parol evidence and Bossier Orthopaedic Clinic, 747 So.2d 731 gives this Court the precise authority to do so.

As stated earlier in this Memorandum Ruling, in Bossier Orthopaedic Clinic, et al., the Louisiana Second Circuit Court of Appeal stated:

> Although parol evidence is inadmissible to vary the terms of a written contract, if . . . there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and show the intent of the parties. In interpreting provisions of an agreement about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms. In ascertaining the intention of the parties to a contract, where it cannot be adequately discerned from the contract or agreement as a whole, the facts and circumstances surrounding the parties at the time of contracting are a relevant subject of inquiry. Determining the intent of the parties becomes, in part, a question of fact.

Bossier Orthopaedic Clinic, et al., 747 S.2d at 735-36. The court further stated that "contrary to the defendants' argument, parol evidence was not admitted to prove that the

defendants were liable for a third party debt, instead, it was admitted to determine the intent of the parties regarding the payment agreement." Id. at 736.  Likewise, in Placid Refining Co. v. Privette, 523 So.2d 865 (La.App. 1 Cir. 1988), the court noted that "between the parties to an instrument, parol evidence is admissible . . . to explain an ambiguity when such explanation is not inconsistent with the written terms. . . . The need for such a rule is never so clear than in cases where the contract does not represent the true intent of the parties.  In interpreting contractual provisions about which there exists some doubt, a court must seek the true intention of the parties, even, if to do so necessitates a departure from the literal meaning of the terms of the agreement." Placid Refining Co., 523 So.2d at 867-68.  After applying these principles of contract law, the Placid court concluded that a mistake had been made in the drafting of the contract and parol evidence should be admitted to determine the true intent of the parties. Id. at 868.

Here, the Court finds that parol evidence is admissible to determine the intent of LA DHH, Winward, and Defendants, not to prove that Defendants are liable for a third party debt.  As stated by the Bossier Orthopaedic Clinic court, "the facts and circumstances surrounding the parties at the time of the contracting are a relevant subject of inquiry." Bossier Orthopaedic Clinic, et al., 747 S.2d at 736.  Such facts and circumstances are clearly evidenced by competent summary judgment evidence in the form of the Kelly affidavit,[4] the repayment agreement, and the general undisputed facts surrounding the

---

[4]Defendants argue that the Kelly affidavit is inadmissible parol evidence that attempts to establish a promise to pay the debt of a third person. See Record Document 33 at 2.  Further, in their response to Daiwa's statement of uncontested facts, Defendants deny the substance of the Kelly affidavit to the extent a response is deemed necessary. See Record Document 34, ¶ 3.  Yet, even in light of Defendants' attack on the Kelly affidavit, summary judgment in favor of Daiwa is still appropriate as the Kelly affidavit was

formation of the promissory note and the personal guarantee/suretyship agreement. Simply stated, the Court agrees that Defendants cannot now be heard to argue that there is a fatal ambiguity as to their personal guarantee of Winward's debt where there is no affidavit stating that they were somehow confused as to exactly what debt they were guaranteeing nor the terms relating to said debt. Clearly, the "course of dealing" and background events and facts between LA DHH, Winward, and Defendants evidences that there is no fatal ambiguity as to the personal guarantee/suretyship agreement at issue in this case. Thus, after employing parol evidence to determine the intent of the parties, this Court finds that Defendants intended to be sureties and personal guarantors of Winward's debt to LA DHH and summary judgment in favor of Daiwa is proper as a matter of law.[5]

---

not the only relevant fact and circumstance surrounding the drafting of the promissory note and personal guarantee/suretyship agreement that this Court considered in ascertaining the intent of the parties and making the instant ruling.

[5]Daiwa also seeks reasonable attorney's fees and costs of these proceedings. See Record Document 11 at 2. Again, as an Erie court this Court is bound to follow Louisiana law. "As a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract." Langley v. Petro Star Corp. of LA, 2001-C-0198 (La. 6/29/01), 792 S.2d 721, 723. In this instance, the promissory note provides:

> If there is any default under this note, and this note is placed in the hands of an attorney for collection, or is collected through any court . . . Maker promises to pay to the holder thereof its reasonable attorneys fees and court costs incurred in collecting or attempting to collect or securing or attempting to secure this note or enforcing the holder's rights in any collateral securing this note, providing the same is legally allowed by the laws of the State of Louisiana.

Record Document 1, Exhibit A. Thus, in light of this contractual provision, Federal Rule of Civil Procedure 54(d), and Local Rule 54.3, this Court finds that, upon application to the Court, Daiwa will be entitled to reasonable attorneys fees and costs.

## IV. CONCLUSION

Based on the foregoing, the Court finds that there are no genuine issues of material fact and that summary judgment in favor of Plaintiff Daiwa Healthco-2, L.L.C. is proper as a matter of law. Accordingly;

Plaintiff Daiwa Healthco-2, L.L.C.'s motion for summary judgment (Record Document 19) is **GRANTED**. Plaintiff Daiwa Healthco-2 is also awarded reasonable attorneys fees and costs. Defendants Willie J. Singleton's, S.P. Davis', and James C. Williams, Jr.'s motion for summary judgment (Record Document 25) is **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 4th day of January, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE